B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>John O. Desmond, Chapter 7 Trustee for<br>the estate of Debra L. Feldman | DEFENDANTS<br>Debra L. Feldman |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Kate E. Nicholson   21 Bishop Allen Drive<br>Nicholson Herrick, LLP   Cambridge, MA 02139<br>857-600-0508 | ATTORNEYS (If Known)   424 Broadway<br>Somerville, MA<br>Martin B. Dropkin   02145<br>Dropkin & Matza LLP   (617) 623-4600 |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor   U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>X Trustee | PARTY (Check One Box Only)<br>X Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This action is to deny the discharge of the debtor, Debra L Feldman, pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B) and 727(a)(4)(A).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ |

| Other Relief Sought |
|---|
| Denial of Discharge |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR      Debra L. Feldman | BANKRUPTCY CASE NO. | 16-13432-MSH |
| DISTRICT IN WHICH CASE IS PENDING      Massachusetts | DIVISION OFFICE      Eastern | NAME OF JUDGE      Hon. Melvin S. Hoffman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF      John O. Desmond, Chapter 7 Trustee for the estate of Debra L. Feldman | DEFENDANT      Roberta Newell, David Feldman, The Roberta G. Newell Living Trust | ADVERSARY PROCEEDING NO.      17-01043 |
| DISTRICT IN WHICH ADVERSARY IS PENDING      Massachusetts | DIVISION OFFICE      Eastern | NAME OF JUDGE      Hon. Melvin S. Hoffman |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE      July 7, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)      **Kate E. Nicholson** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | **Chapter 7** |
| **Debra L. Feldman** | ) | **Case No. 16-13432-MSH** |
| | ) | |
| **Debtor** | ) | |
| | ) | |
| **John O. Desmond, as Chapter 7 Trustee** | ) | |
| **of the estate of Debra L. Feldman** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **Adv. Pro. No.** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **Debra L. Feldman** | ) | |
| | ) | |
| **Defendant** | ) | |

## COMPLAINT

### INTRODUCTORY STATEMENT

1.   This is an action brought by John O. Desmond, in his capacity as Chapter 7

Trustee, to deny the discharge of the debtor, Debra L Feldman, pursuant to 11 U.S.C. §§

727(a)(2)(A), 727(a)(2)(B) and 727(a)(4)(A).

### PARTIES

2.   The plaintiff is John O. Desmond in his capacity as Chapter 7 Trustee for the

estate of Debra L. Feldman ("Trustee").  The Trustee was appointed on September 5,

2016 and has standing to bring this action on behalf of the estate pursuant to 11 U.S.C. §

727(c)(1).

3.  The defendant is Debra L. Feldman ("Debtor"), an individual believed to be residing at 13 Aurora Lane, Salem, MA and the voluntary debtor in related chapter 7 case of 16-13432-MSH.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

5.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

**A.  Background**

6.  Between approximately 2002 and 2014, the Debtor was employed by H&R Block Eastern Enterprises, Inc. ("H&R Block") on a seasonal basis in order to provide tax preparation and related services.

7.  The Debtor also works as a fabric engineer.  On information and belief, the Debtor operates a business for this purpose.

8.  In connection with her employment with H&R Block, the Debtor signed a "Tax Professional Employment Agreement."  This agreement contained a non-compete provision that prohibited the Debtor from providing tax related services to any H&R Block client for two years after the termination of her employment with H&R Block.

9.  In January 2015, the Debtor created Your Tax Resource, Inc. and/or Your Tax Resource, LLC ("Your Tax Resource"), in order to provide tax preparation and related services.

10. The Debtor, through Your Tax Resource, provided tax-related services to former clients of H&R Block in violation of her employment agreement.

2

11. On April 8, 2015 H&R Block filed suit against the Debtor in the Essex Superior Court, case no. 1577 CV 00545, alleging violations of the non-compete provision of the employment agreement.

12. On April 28, 2015, the Debtor agreed to the entry of a Stipulated Preliminary Injunction Order prohibiting the Debtor from providing tax-related services to certain clients of H&R Block.

13. On February 1, 2016, H&R Block served the Debtor with a demand for arbitration pursuant to the employment agreement, alleging breach of contract, misappropriation of property, confidential information, and trade secrets, tortious interference with advantageous business relationships, and unjust enrichment.  Shortly thereafter, H&R Block filed a motion to stay litigation in the Superior Court in order to proceed with arbitration.  The motion to stay litigation was allowed on March 9, 2016.

14. On August 16, 2016, the arbitrator heard arguments on summary disposition motions filed both by H&R Block and the Debtor.

15. On August 30, 2016, the arbitrator issued a partial final award ("Partial Final Award") in favor of H&R Block, awarding damages, attorney's fees, and injunctive relief.

16. As described in more detail below, during the pendency of the H&R Block action and within the one year prior to the case filing, the Debtor transferred all of her non-exempt assets, worth approximately $459,145.63, to her mother and her brother for little or no consideration.

17. Three days after the arbitrator entered the Partial Final Award, on September 2, 2016, the Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code.

18. On information and belief, the Debtor mistakenly believed that by filing a bankruptcy, she could be discharged of her obligation to comply with the injunctive relief awarded to H&R Block.

19. When the Debtor realized her mistake, she sought to dismiss her bankruptcy case. The Debtor's motion to dismiss was denied by this Court on May 10, 2017.

20. The Debtor's behavior pre- and post-petition reveals her intent to hinder, delay or defraud her creditors by transferring all of her non-exempt property to family members, filing for chapter 7 bankruptcy, and attempting to discharge her legal and equitable obligations to H&R Block.

### B. Pre-Petition and Post-Petition Transfers

I. 16 C Street, Conway, New Hampshire

21. In March 2007, the Debtor purchased property located at 16 C Street, Conway, New Hampshire 03818 ("NH Property"). The NH Property is a vacation home and is not used as a primary residence. See deed recorded at Carroll County Registry of Deeds on March 23, 2007 at Book 2613, Page 0800, attached as Exhibit 1.

22. In December 2011, the Debtor transferred the NH Property from herself to herself and her brother, David Feldman ("Mr. Feldman"), as joint tenants with rights of survivorship. See deed recorded at Carroll County Registry of Deeds on December 22, 2011 at Book 2968, Page 780 attached as Exhibit 2.

23. In July 2016, the Debtor and Mr. Feldman transferred the NH Property "for consideration paid" from themselves as joint tenants with rights of survivorship, to the Debtor's mother, Roberta Newell ("Ms. Newell"), and Mr. Feldman as joint tenants with rights of survivorship ("NH Real Estate Transfer"). See quitclaim deed recorded at

Carroll County Registry of Deeds on July 5, 2016 at Book 3270, Page 420 attached as

Exhibit 3.

24. Prior to the NH Real Estate Transfer, there was a first mortgage on the NH

Property granted by the Debtor and Mr. Feldman with an approximate balance owed of

$77,000.00.

25. Shortly before and in anticipation of the NH Real Estate Transfer, the Debtor

obtained a line of credit, secured by a mortgage on her primary residence, and used the

line of credit, *inter alia,* to completely satisfy the outstanding mortgage on the NH

Property.  See Debtor's Objection to the Motion to Extend Time to Object to Discharge,

¶¶ 2(c)-(d), Docket No. 79, attached as Exhibit 4.

26. On information and belief, the NH Property was worth at least $125,000.00 at the

time of the NH Real Estate Transfer.

27. The Debtor has alleged that the NH Real Estate Transfer was made on account of

a debt she owed to Ms. Newell.

28. The Debtor did not receive reasonably equivalent value for the transfer.

29. The Debtor has retained a key and access to the NH Property.

30. On information and belief, the Debtor transferred the NH Property with the actual

intent to hinder, delay or defraud her creditors.

31. The Trustee has filed a complaint to avoid the NH Real Estate Transfer as a

fraudulent and/or preferential transfer.  See, Desmond v. Newell, et al., Adversary

Proceeding No. 17-01043.

II. Ameriprise Account

32. Prior to 2010, the Debtor was the owner of an investment account administered by

Ameriprise Financial ("Ameriprise Account").

33. In or about 2010, the Debtor transferred the Ameriprise Account from herself individually to herself, Ms. Newell, and Mr. Feldman as joint tenants.

34. The 2010 transfer was allegedly in consideration for Ms. Newell agreeing to provide on-going financial support to the Debtor and Mr. Feldman agreeing to provide a lifetime of IT services and computer technical support.

35. Ms. Newell and Mr. Feldman have never contributed to the Ameriprise Account nor have they ever withdrawn funds from the Ameriprise Account.

36. In April 2016, the Debtor transferred her interest in the Ameriprise Account to Ms. Newell and Mr. Feldman ("Ameriprise Transfer").  At the time of the Ameriprise Transfer, the value of the account was approximately $139,936.90.

37. The Ameriprise Transfer was allegedly in consideration for Ms. Newell paying the Debtor's law school tuition and living expenses and Mr. Feldman providing a lifetime of IT services and computer technical support.

38. On information and belief, the Debtor transferred the Ameriprise Account with the actual intent to hinder, delay or defraud her creditors.

39. The Trustee has filed a complaint to avoid the Ameriprise Transfer as a fraudulent and/or preferential transfer.  See, Desmond v. Newell, et al., Adversary Proceeding No. 17-01043.

III. 250 Hammond Pond Parkway, Unit 1101-N, Chestnut Hill, Massachusetts

40. In May 2016, the Debtor acquired a one-half remainder man interest in the property at 250 Hammond Pond Parkway, Unit 1101-N, Chestnut Hill, Massachusetts ("MA Property") subject to the reservation of a life estate by the grantor, Ms. Newell. See deed recorded at Middlesex South Registry of Deeds on May 18, 2016 at Book 67271, Page 26, attached as Exhibit 5.

41. By deed dated August 19, 2016, two days after the oral arguments on the summary disposition motions in the H&R Block action and two weeks before the Debtor commenced her bankruptcy case, the Debtor transferred her interest in the MA Property back to Ms. Newell for $1.00 ("MA Real Estate Transfer").

42. On September 12, 2016, ten days after the Debtor had commenced her bankruptcy case, the transfer deed was recorded.  See deed recorded at the Middlesex South Registry of Deeds at Book 67995, Page 54, attached as Exhibit 6.

43. On information and belief, the Debtor or her agent caused the MA Property transfer deed to be recorded.

44. On information and belief, at the time of the transfer the MA Property was worth at least $700,000.00.

45. On information and belief, there are no liens on the MA Property.

46. The Debtor has alleged that the MA Real Estate Transfer occurred pursuant to an oral trust of which the Debtor was a trustee.  See Exhibit 4, ¶¶ 5, 17-20.

47. On information and belief, the Debtor transferred the MA Property with the actual intent to hinder, delay or defraud her creditors.

48. The Trustee has filed a complaint to avoid the MA Real Estate Transfer as a fraudulent transfer or pursuant to his strong-arm powers.  See, Desmond v. Newell, et al., Adversary Proceeding No. 17-01043.

IV. Known and Unknown Preferential Transfers

49. In June 2016, the Debtor obtained a home equity loan from Century Bank and Trust Company ("Century Bank").  See mortgage granted by Debtor to Century Bank on June 11, 2016 and recorded at the Essex South Registry of Deeds, on June 16, 2016 at Book 35007, Page 235, attached as Exhibit 7.

7

50. The Debtor has stated that "Debtor's intent in taking the [Century Bank] loan was to significantly decrease her monthly obligations.  Debtor, in fact, paid off all but one creditor – TD Auto Finance, who still holds the loan on the Debtor's vehicle."  See Exhibit 4, ¶ 5(d).

51. On information and belief, the Debtor used the funds from the Century Bank loan to pay off an existing mortgage on the NH Property.

52. On information and belief and based on the Debtor's statement referenced above, the Debtor used the funds to pay off other creditors as well.

53. Given that the mortgage securing the Century Bank loan was executed on June 16, 2016, it can be inferred that these payments were made within the 90 days prior to the Debtor's case filing.

54. At her § 341 meetings, the Debtor testified that the NH Real Estate Transfer and the Ameriprise Transfer were made on account of obligations the Debtor owed Ms. Newell and Mr. Feldman.

## C. Debtor's Schedules and Statement of Financial Affairs

55. On September 9, 2016, the Debtor filed, *inter alia*, her schedules A-J and statement of financial affairs.

56. Schedule A/B at line 1 asks a debtor, "Do you own or have any legal or equitable interest in any residence, building, land, or similar property?"

57. In response to line 1, the Debtor did not disclose any legal or equitable interest in the MA Property.  See Line 1 of Debtor's schedule A/B attached as Exhibit 8.

58. Schedule A/B part 4 asks a debtor "Do you own or have a legal or equitable interest in any of the following?"  Under line 25, a debtor is asked for information

pertaining to "Trusts, equitable or future interests in property (other than anything listed in line 1), and rights and powers exercisable for your benefit."

59. In response to line 25, the Debtor checked the box "No" and did not disclose the alleged interest in an oral trust pertaining to the MA Property.  See Line 25 of Exhibit 8.

60. The statement of financial affairs ("SOFA") at line 6 asks a debtor, *inter alia*, "During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600.00 or more?"

61. In response to the question at line 6, the Debtor did not disclose the approximately $77,000.00 payment made to satisfy the mortgage on the NH Property or payments to any other of the creditor she alleges to have paid off in June 2016.  See Line 6 of Debtor's SOFA attached as Exhibit 9.

62.  The SOFA at line 7 asks a debtor, "Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider? *Insiders* include relatives…."

63. In response to the question at line 7, the Debtor checked the box "No" and did not disclose the NH Real Estate Transfer or the Ameriprise Transfer. See Line 7 of Exhibit 9.

64. The SOFA at line 8 asks a debtor, "Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider? Include payments on debts guaranteed or cosigned by an insider."

65. In response to the question at line 8, the Debtor checked the box "No" and did not include the payment of the mortgage on the NH Property, for which her brother Mr. Feldman was a co-obligor. See Line 8 of Exhibit 9.

9

66. The SOFA at line 18 asks a debtor, "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"

67. In response to the question at line 18, the Debtor disclosed the NH Real Estate Transfer stating that the transfer of her 50% interest in the NH Property took place in 2015 and was to her mother "in consideration of Mother paying living expenses and tuition of Debtor to attend law school."  See Line 18 of Exhibit 9.

68. The Debtor did not disclose the Ameriprise Transfer on her SOFA.

69. The Debtor did not disclose the MA Real Estate Transfer on her SOFA.

70. The SOFA at line 23 asks a debtor, "Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone."

71. In response to the question at line 23, the Debtor checked the box "No" and did not disclose the alleged oral trust with her mother, Ms. Newell. See line 23 of Exhibit 9.

72. The SOFA at line 27 asks a debtor, "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any businesses?"

73. In response to the question at line 27, the Debtor checked the box "No" and did not disclose her interest in Your Tax Resource or in any sole proprietorship as a fabric engineer.  See Line 27 of Exhibit 9.

74. The Debtor signed her schedules and SOFA under the penalty of perjury.

75. The Debtor has not amended her schedules or SOFA.

## CAUSES OF ACTION

### COUNT I:  Denial of Discharge under 11 U.S.C. § 727(a)(2)(A)

76. The Trustee repeats and realleges the allegations contained in Paragraphs 1 through 75 as if separately set forth herein.

77. The Debtor effectuated the NH Transfer, the Ameriprise Transfer, and the MA Transfer within one year before the date of the filing of the petition with the intent to hinder, delay or defraud a creditor or an officer of the estate.

78. Therefore, the Debtor's discharge should be denied pursuant to § 727(a)(2)(A).

### COUNT II:  Denial of Discharge under 11 U.S.C. § 727(a)(2)(B)

79. The Trustee repeats and realleges the allegations contained in Paragraphs 1 through 78 as if separately set forth herein.

80. The Debtor perfected the MA Real Estate Transfer after the date of the filing of the petition.

81. The MA Real Estate Transfer was made with the intent to hinder, delay or defraud a creditor or an officer of the estate.

82. Therefore, the Debtor's discharge should be denied pursuant to § 727(a)(2)(B).

### COUNT III:  Denial of Discharge under 11 U.S.C. § 727(a)(4)(A)

83. The Trustee repeats and realleges the allegations contained in Paragraphs 1 through 82 as if separately set forth herein.

84. In her schedules and statement of financial affairs, which were signed under the penalties of perjury, the Debtor failed to disclose:

      a.      the Ameriprise Transfer;

      b.      the MA Real Estate Transfer;

11

c.     any interest she had at the time of the case filing in the MA Property;

d.     any interest she had at the time of the case filing in the purported oral

trust with Ms. Newell;

e.     the preferential payment of the mortgage on the NH Property;

f.     the fact that the payment of the mortgage on the NH Property benefited

Mr. Feldman, an insider;

g.     the alleged preferential payment of debts to Ms. Newell and Mr. Feldman

through the NH Transfer and Ameriprise Transfer;

h.     on her SOFA, her interest in Your Tax Resource;

i.     on her schedules and SOFA, her interest in a sole proprietorship as a fabric

engineer.

85. Therefore, the Debtor's discharge should be denied pursuant to § 727(a)(4)(A)

## PRAYER FOR RELIEF

WHEREFORE, the Trustee requests that this Court enter an order denying the

Debtor's discharge pursuant to §§ 727(a)(2)(A) (Count I); 727(a)(2)(B) (Count II); and/or

727(a)(4)(A) (Count III) and for such further relief as it deems just.

Respectfully submitted,
**John O. Desmond, Ch. 7 Trustee of the
estate of Debra L. Feldman**
By his attorney,

/s/ Kate E. Nicholson
Kate E. Nicholson (BBO# 674842)
Nicholson Herrick LLP
21 Bishop Allen Dr.
Cambridge, MA 02139
(857) 600-0508
knicholson@nicholsonherrick.com

Dated: July 7, 2017

# Exhibit 1

RECEIVED
CARROLL COUNTY REGISTRY

2007 MAR 23  AM 09:48

*Ann P. Acton*

REGISTER OF DEEDS

0003958

**STATE OF NEW HAMPSHIRE**

DEPARTMENT
OF
REVENUE
ADMINISTRATION

REAL ESTATE
TRANSFER TAX

####2THOUSAND   2  HUNDRED AND  50  DOLLARS

| NO. | DAY | YR. | | AMOUNT |
| 03/23/2007 | 804059 | $ | ####2250.00 |

VOID IF ALTERED

---

The space above this line is reserved for recording information

# WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS that **CHRISTOPHER W. FLEMING
and JENNIFER M. WOHLERT,** both single persons, of 100 E Street, Conway,
County of Carroll, State of New Hampshire 03818, for consideration paid, grant to
**DEBRA FELDMAN**, a single woman, of 13 Aurora Lane, Salem, County of Essex,
Commonwealth of Massachusetts 01470, with WARRANTY COVENANTS, the
following:

A certain lot or parcel of land located in Conway, County of Carroll, State of New
Hampshire, situate in Mt. Cranmore Lake Shores, so-called, and being cottage lot
numbered 6C (Six C), as depicted on plan entitled "Plan of Land, Conway, N.H., Mt.
Cranmore Lake Shores" surveyed and drawn in 1965-1966-1967 by L. M. Gray, said
plan being recorded at the Carroll County Registry of Deeds in Plan Book 10, Page 48,
reference to which is hereby made for more particular description of the same.

This conveyance is intended to include the common right of travel to and from the lot
hereby conveyed from the public highways over the roadways connecting therewith as
shown on said plan, and as now or hereafter laid out and constructed as a part of the
development known as Mt. Cranmore Lake Shores, together with the further right to
use in common with others such lots as now or may be in the future designated as
"Beach Lots" by Mt. Cranmore Lake Shores, Inc., its successors or assigns.

This conveyance is intended to be made subject in every respect to the same perpetual
use restrictions as are set forth in certificate imposing such restrictions on certain
land of said Mt. Cranmore Lake Shores, Inc., said certificate being dated May 9, 1966
recorded in Carroll County Records, Book 401, Page 509; this is, in Carroll County
Registry of Deeds.

Meaning and intending to describe and convey those premises conveyed by Warranty
Deed of Carole M. Andrews to the Grantor herein, dated December 7, 1998 and
recorded at the Carroll County Registry of Deeds at Book 1780, Page 926.

BK2613 PG0800

restrictions on certain land of said Mt. Cranmore Lake Shores, Inc., said certificate being dated May 9, 1966, recorded in Carroll County Records, Book 401, Page 509; this is, in Carroll County Registry of Deeds.

Meaning and intending to describe and convey those premises conveyed by Warranty Deed of Carole M. Andrews to the Grantor herein, dated December 7, 1998 and recorded at the Carroll County Registry of Deeds at Book 1780, Page 926.

Said grantors hereby releases to said grantee all rights of homestead and other interests therein.

EXECUTED, this __15__ day of ___March___, 2007.

Christopher W. Fleming

Jennifer M. Wohlert

STATE OF NEW HAMPSHIRE        COUNTY OF CARROLL

The foregoing instrument was acknowledged before me this __15__ day of ___March___, 2007 by Christopher W. Fleming and Jennifer M. Wohlert known to me or satisfactorily proven by photo identification to be the persons whose names are subscribed to the foregoing instrument and acknowledged that they executed the same for the purposes therein contained.

Notary Public/Justice of the Peace
My Commission Expires: __2/22/11__



VICKI L. WEEGAR
- MY -
COMMISSION
EXPIRES
FEBRUARY 22,
2011
STATE OF
NEW HAMPSHIRE
NOTARY PUBLIC

BK 2613 PG 0801

# Exhibit 2

**Exhibit 2**



Doc # 0014083  Dec 22, 2011 2:38 PM

Register of Deeds, Carroll County

C/H
L-CHIP
CAA034775

STATE OF NEW HAMPSHIRE

DEPARTMENT
OF
REVENUE
ADMINISTRATION

REAL ESTATE
TRANSFER TAX

40 DOLLARS

★★★★ THOUSAND  ★ HUNDRED AND  AMOUNT

881026 $ ★★★★★★40.00

12/22/2011  VOID IF ALTERED

WHEN RECORDED, RETURN TO:
Finiti – Finiti Recording Team
Accommodation Recording per Client Requests
7090 Samuel Morse Drive, Ste 400
Columbia, MD 21046  8548016

WHEN RECORDED MAIL TO:
Debra Feldman, et al
13 Aurora Lane
Salem, Massachusetts 01970

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUITCLAIM DEED
### TITLE OF DOCUMENT

**This Deed is Exempt from taxation per RSA 78-B:2(IX)** - To noncontractual transfers

**Debra Feldman, a single woman**, OF 13 Aurora Lane, City of Salem, Essex County, Commonwealth of Massachusetts, FOR CONSIDERATION PAID, grant to **Debra Feldman, a single woman and David Feldman, a married man, as joint tenants with right of survivorship** OF 13 Aurora Lane, City of Salem, Essex County, Commonwealth of Massachusetts, 01970,

WITH QUITCLAIM covenants, the following described real estate, situated in the Town of Conway, County of **Carroll**, State of **New Hampshire**:

A CERTAIN LOT OR PARCEL OF LAND LOCATED IN CONWAY, COUNTY OF CARROLL, STATE OF NEW HAMPSHIRE, SITUATE IN MT. CRANMORE LAKE SHORES, SO-CALLED, AND BEING COTTAGE LOT NUMBERED 6C (SIX C), AS DEPICTED ON PLAN ENTITLED PLAN OF LAND, CONWAY, N.H., MT. CRANMORE LAKE SHORES SURVEYED AND DRAWN IN 1965-1966-1967 BY L.M. GRAY, SAID PLAN BEING RECORDED AT THE CARROLL COUNTY REGISTRY OF DEEDS IN PLAN BOOK 10, PAGE 48, REFERENCE TO WHICH IS HEREBY MADE FOR MORE PARTICULAR DESCRIPTION OF THE SAME.

MORE commonly known as: **16 C Street, Conway, New Hampshire 03818**

Assessor's Parcel Number: **278-53**

Prior Recorded Doc. Ref.: **Deed**: Recorded **March 23, 2007**; Book **2613**, Page **0800**

Subject To:  Restrictions, Conditions, Covenants, Rights, Rights of Way, and easements now of record, if any.

BK 2968 PG 780

I/We release to said grantee(s) all rights of homestead and other interests therein.

_Debra Feldman_
Debra Feldman

**STATE OF** Commonwealth of Massachusetts
**COUNTY OF** Essex } ss

The foregoing instrument was acknowledged before me this 9th day of
December ____, 20 11 , by **Debra Feldman.**

**NOTARY SEAL**

_Ellen M. S. Faiella_
Signature of Person Taking Acknowledgement

_Notary Public_
Title Or Rank

_N/A_
Serial Number, if any

My Commission Expires: 02/13/2015

ELLEN M. S. FAIELLA
Notary Public
Commonwealth of Massachusetts
My Commission Expires Feb 13, 2015



**EXHIBIT A**

A CERTAIN LOT OR PARCEL OF LAND LOCATED IN CONWAY, COUNTY OF CARROLL,
STATE OF NEW HAMPSHIRE, SITUATE IN MT. CRANMORE LAKE SHORES, SO-CALLED,
AND BEING COTTAGE LOT NUMBERED 6C (SIX C), AS DEPICTED ON PLAN ENTITLED
PLAN OF LAND, CONWAY, N.H., MT. CRANMORE LAKE SHORES SURVEYED AND DRAWN
IN 1965-1966-1967 BY L.M. GRAY, SAID PLAN BEING RECORDED AT THE CARROLL
COUNTY REGISTRY OF DEEDS IN PLAN BOOK 10, PAGE 48, REFERENCE TO WHICH IS
HEREBY MADE FOR MORE PARTICULAR DESCRIPTION OF THE SAME.

TAX ID: 278-53.

BEING THE SAME FEE SIMPLE PROPERTY CONVEYED BY WARRANTY DEED FROM
CHRISTOPHER W. FLEMING  SINGLE and JENNIFER M. WOHLERT  SINGLE  TO  DEBRA
FELDMAN   SINGLE , DATED 03/15/2007 RECORDED ON 03/23/2007 IN BOOK 2613, PAGE
0800 IN CARROLL  COUNTY RECORDS.  STATE OF NH.



BK 2968 PG 782

# Exhibit 3

Doc # 0006348    Jul 5, 2016 3:17 PM

Register of Deeds, Carroll County

*Lisa Scott*

C/H
L-CHP
CAA078287

SPACE ABOVE THIS LINE FOR ECORDER' USE

## QUITCLAIM DEED
### TITLE OF DOCUMENT

This Deed is Exempt from taxation per RSA 78-B:2(IX) – To non-contractual transfers

**Debra Feldman, a single woman** and **David Feldman, a single man,** BOTH OF 13 Aurora Lane, City of Salem, Essex County, Commonwealth of Massachusetts, FOR CONSIDERATION PAID, grant, on the 23[th] day of November, 2015, to **Roberta Newell, a single woman and David Feldman, a single man, as joint tenants with right of survivorship** OF 250 Hammond Pond Parkway, Apt. 1101N, City of Chestnut Hill, Middlesex County, Commonwealth of Massachusetts, 02467.

WITH QUITCLAIM covenants, the following described real estate, situated in the Town of Conway, County of **Carroll**, State of **New Hampshire:**

A CERTAIN LOT OR PARCEL OF LAND LOCATED IN CONWAY, COUNTY OF CARROLL, STATE OF NEW HAMPSHIRE, SITUATE IN MT. CRANMORE LAKE SHORES, SO-CALLED, AND BEING COTTAGE LOT NUMBERED 6C (SIX C), AS DEPICTED ON PLAN ELTITLED PLAN OF LAND, CONWAY, N.H., MT CRANMORE LAKE SHORES SURVEYED AND DRWWN IN 1965-1966-1967 BY L.M. GRAY, SAID PLAN BEING RECORDED AT THE CARROLL COUNTY REGISTRY OF DEEDS IN PLAN BOOK 10, PAGE 46, REFERENCE TO WHICH IS HEARBY MADE FOR MORE PARTICULAR DESCRIPTION OF THE SAME.

MORE commonly known as: **16 C Street, Conway, New Hanpshire  03818**

Assessor's Parcel Number:  **278-53**

Prior Recorded Doc. Ref: **Deed:** Recorded **December 22, 2011**; Book 2968, Page 0780

Subject To:    Restrictions, Conditions, Covenants, Rights, Rights of Way, and easements now of record, if any.

BK 3270 PG 420

I/We release to said grantee(s) all rights of homestead and other interests therein.

Debra Feldman

David Feldman

STATE OF ___NH___

COUNTY OF ___CARROLL___

The foregoing instrument was acknowledged before me this 5 day of JULY, 2016, by **Debra Feldman and David Feldman.**

NOTARY SEAL

Signature of Person Taking Acknowledgement

HEAD TELLER ID BANK

Title or Rank

_____
Serial Number, if any

My commission Expires: 12/2/20

EXHIBIT A

A CERTAIN LOT OR PARCEL OF LAND LOCATED IN CONWAY, COUNTY OF
CARROL, STATE OF NEW HAMPSHIRE, SITUATE IN MT CRANMORE LAKE
SHORES, SO-CALLED, AND BEING COTTAGE LOT NUMBERED 6C (SIX C), AS
DEPICTED ON PLAN ENTITLED PLAN OF LAND, CONWAY, N.H., MT CRANMORE
LAKE SHORES SURVEYED AND DRAWN IN 1965-1966-1967 BY L.M. GRAY, SAID
PLAN BEING RECORDED AT THE CARROLL COUNTY REGISTRY OF DEEDS IN
PLAN BOOK 10, PAGE 48, REFERENCE TO WHICH IS HEREBY MADE FOR MORE
PARTICULAR DESCRIPTION OF THE SAME.

TAX ID: 278-53

BEING THE SAME FEE SIMPLE PROPERTY CONVEYED BY WARRANTY DEED
FROM DEBRA L. FELDMAN SINGLE and DAVID A. FELDMAN SINGLE TO
ROBERTA G. NEWELL SINGLE and DAVID A. FELDMAN SINGLE, DATED
07/05/2016, RECORDED 07/05/2016 IN BOOK 3270 , PAGE 0920 IN
CARROLL COUNTY RECORDS, STATE OF NH.

# Exhibit 4

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN
DISTRICT OF MASSACHUSETTS

**U.S. BANKRUPTCY COURT**

**2011 JUN 20  P 12: 00**

In Re:                              )
                                    )
                                    )                    Chapter 7
DEBRA L.  FELDMAN                    )                    Case No. 16-13432
                                    )
              Debtor                )
                                    )
                                    )

## DEBTOR'S OBJECTION TO THE MOTION
## TO EXTEND TIME TO OBJECT TO DISCHARGE

Debtor, Debra Feldman, opposes the motion of the trustee and H&R Block to extend time

in which to object to the discharge of the debtor.  In support thereof, debtor states:

1.      The deadline to object to debtor's discharge under §727 was December 5, 2016.

2.      The Trustee seeks to prevent debtor's discharge so as to set aside two prepetition

transfers, consisting of a condo homestead buy debtor's mother: (1) from Debtor's mother to

Debtor and Debtor's brother and (2) the reconveyance from Debtor and Debtor's brother back to

Debtor's mother.

3.      The Trustee and H&R Block alleged actual fraud in the second transfer only in that the

reconveyance supposedly was part of a scheme for Debtor to avoid paying Debtor's creditors.

4.      It is well-settled in Massachusetts and in other jurisdictions that creditors of a trustee

under a performed oral trust cannot attach a reconveyance to a beneficiary as a fraudulent

transfer under either the insolvency or intent provisions of the fraudulent conveyance statute.

*In re Gustie*, 32 B.R. 466, 471 (Bankr. Ct. D. Mass. 1983).  *See also e.g., Ward v. Grant*, 9

Mass.App. 364, 401 N.E.2d 160 (1980); *Ferguson v. Winchester Trust Co.*, 267 Mass. 397, 166

N.E. 709 (1929); *Weinberg v. Brother,* 263 Mass. 61, 160 N.E. 403 (1923). *Accord, Murphy v.*

*Johnson,* 439 S.W.2d 440 (Tex.Civ.App.1969); *Jose v. Pacific Tile and Porcelain Co.,* 251

Cal.App.2d 141, 58 Cal.Rptr. 880 (1967).

5.      The facts here are these:

    a.  On May 18, 2016, in a temporary, stop-gap, tax planning measure, Debtor's mother conveyed the condo to Debtor and Debtor's brother for $1 ("May Conveyance") which was formalized with a deed recorded with the Middlesex South Registry of Deeds.

    b.  Although nothing on the face of the deed indicates anything other than a standard life estate, Debtor, Debtor's brother, and Debtor's Mother, all affirm that the conveyance was made with the understanding that the transfer was to be temporary until Debtor's Mother restructured her Living Trust.

    c.  Following the May Conveyance, Debtor restructured her own finances in an attempt to alleviate the financial difficulties resulting from Debtor defending H&R Block' list of fabricated claims. In June 2016, Debtor obtained a low interest line of credit with Century Bank ("Century Loan"). Where the loan was in Debtor's name only and was executed solely by Debtor, Debtor clearly was not insolvent when she obtained the loan.

    d.  Debtor's intent in taking the loan was to significantly decrease her monthly obligations. Debtor, in fact, paid off all but one creditor – TD Auto Finance. who still holds the loan on Debtor's vehicle.

    e.  In mid-July, Debtor and Debtor's brother arranged to reconvey the condo back to their mother (July Conveyance) as originally planned. The deed was signed August 19, 2016. As was the case with the May Conveyance, Debtor's mother paid Debtor and Debtor's brother $1 in consideration for the transfer to return the status quo.

    f.  On these facts, the Trustee cannot prove actual fraud as Debtor's mother never gave up residency in the condo and Debtor and Debtor's brother never took possession of it before the reconveyance was completed. Accordingly, the issue before the Court is whether the Trustee can meet the burden of proving constructive fraud.

6.      Here, the trustee cannot meet that burden.

7.      Although Debtor's mother paid Debtor and Debtor's brother $1 consideration for the

transfer of the condo, the court must note that Debtor and Debtor's brother paid their mother the

same $1 consideration for the original transfer. Here, the May conveyance was merely part of a

2

comprehensive plan to protect the asset of Debtor's mother until her living trust was restructured.

8.     Although constructive fraudulent intent can be inferred from circumstances surrounding such a transfer, Debtor, Debtor's brother, and Debtor's mother affirm that the May conveyance was a stop-gap measure until Debtor's mother restructured her living trust which restructure has been accomplished.  The aid of Debtor and Debtor's brother in that restructure constitutes "other consideration" paid by Debtor and Debtor's brother for the May conveyance.

9.     Debtor's financial condition at the time of the May conveyance and the timing of the July reconveyance support that assertion.  Just prior to the May conveyance, Debtor's mother paid the May tax bill and maintenance fee and then paid the June and July maintenance.  Debtor could ill-afford to assume even half responsibility for paying the upcoming August tax bill or the August maintenance fee.

10.     It is undisputed that Debtor was attempting to recover from the financial difficulties caused by H&R Block's fraudulent claims against her, which is supported by the Century loan significantly lowering Debtor's monthly payments.  Moreover, the Century loan is secured by Debtor's primary residence which is not part of the bankrupt estate.

11.     The facts and evidence establish that, although Debtor and Debtor's brother had very brief, bare record title to the condo, it provided them no liquidity or ability to meet their obligations as they might come due.  In fact, the monthly maintenance and utilities, and annual real estate taxes on the condo would have over-burdened Debtor's limited cash flow.

12.     The timing of the May conveyance militates against a finding of constructive fraud. First, the near contemporaneous nature of the May conveyance and the inception of the Century loan support Debtor's claim that she obtained the Century loan as part of a concerted effort to significantly reduce cash outlay each month and enable Debtor to meet on-going obligations as

3

they came due. And Debtor was on track for financial recovery. In re MANN, 2006 WL 1455475 (D. N. Hampshire May 9, 2006)

13.     The fact that H&R Block is the only creditor that filed a claim at Debtor's bankruptcy indicates that Debtor did not incur any significant debt after the May conveyance which is consistent with her claim that obtaining the Century loan was part of a concerted effort to achieve financial rehabilitation. *Id.*

14.     The fact that Debtor ultimately needed to file for bankruptcy protection is not enough to establish that Debtor had any reason to believe, at the time of the May conveyance (or even the July conveyance) that the arbiter hearing the H&R Block case would grant Summary Judgment on claims that Debtor had proved beyond doubt were fabrications. *Id.*

15.     Where, at the time of the May conveyance (and the July conveyance), applicable contract law sided exclusively with Debtor neither Debtor nor Debtor's mother had any reason to believe that Debtor would incur any debt at all to H&R Block. There also is no evidence to establish that Debtor intended to incur, or believed, or reasonably should have believed that she would incur any such debt. *Id.*

16.     Where Debtor's mother has, in fact, restructured her living trust, there is no evidence that Debtor's mother ever intended for Debtor and Debtor's brother to retain anything but the briefest of bare record title in the condo.

17.     Under the oral trust in the land created in the condo, the bare record title of Debtor and Debtor's brother made them only temporary trustees. Where trustees do not own an interest in the assets for which they are trustees, Debtor was not concealing an asset because, as a trustee, she had no ownership interest in the condo. *In re Associated Enterprises, Inc.*, 234 BR 718, 723-724 (Bankr. Ct., WD Wisconsin 1999).

4

18.     Moreover, an oral trust in land is not a fraudulent conveyance under Massachusetts law.

19.     Here, the sole function of Debtor and Debtor's brother was that of trustees holding bare record title.  The financial condition of Debtor and Debtor's brother were not affected by either receipt from or retransfer to the original and rightful owner of the condo – Debtor's mother.

20.     On all these facts, and under Mass. G.L. c. 109A, §6, Debtor had no interest in the condo to report to the bankruptcy court.

21.     Two different rationales have evolved for denying creditors the right to make claims against property retransferred in fulfillment of an oral trust such as the one here.

   a) Since trustees, such as Debtor and Debtor's brother, have only bare record title the retransfer pursuant to the oral agreement to reconvey does not affect the trustees' financial condition and does not deprive their creditors of any assets out of which they could satisfy claims. *In re Gustie,* 32 BR 466, 471 (Bankr. Court, D. Mass. 1983) seeing *Ward v. Grant,* 9 Mass.App. 364, 401 N.E.2d 160 (1980).

   b) The reconveyance cannot be considered a fraudulent conveyance by an insolvent because the equitable obligation to reconvey was fair consideration for the transfer. *Id. seeing Liberty Trust Co. v. Hayes,* 244 Mass. 251, 138 N.E. 582 (1923).

   c) Intent to defraud Debtor's creditors also is lacking because the intent of the retransfer was fulfillment of the oral agreement. *Id. seeing Ward v. Grant,* 9 Mass.App. 364, 367, 401 N.E.2d 160 (1980).

   d) Evidence of the purpose behind the retransfer is admissible and does not violate the parol evidence rule because the evidence concerning the circumstances of the conveyance is not offered to contradict the deed, but to establish the motive for the conveyance. *Id. seeing Ward v. Grant, supra,* at 368, 401 N.E.2d at 162. *Also  In Re Duggan,* 2017 BNH 6 (Bankr. Court, D. New Hampshire 2017).

22.     Alternatively, claims against property held under an oral trust, where there is a confidential relation between the parties, as there is here, held the property in constructive trust for the beneficiary (here, Debtor's mother). *Gustie, supra.*

   a) Although, under the Statute of Frauds, a party cannot enforce an express oral trust, a constructive trust nonetheless arises where a transferee is in a confidential relation to the grantor and the conveyance was made under an oral agreement to reconvey. *Id.*

b) Here, Debtor and Debtor's brother, as the Trustees, were bound to hold their mother's condo in constructive trust until reconveyance to Debtor's mother. *Gustie, supra*

c) Therefore, although the result of holding the property in constructive trust for a beneficiary is the same as enforcing an oral trust, the reason is to prevent unjust enrichment of the transferees – here, Debtor and Debtor's brother. *Id.*

d) Evidence of an oral trust is admissible not to show the trust but to prevent unjust enrichment to the transferee which would result if Debtor and Debtor's brother were allowed to retain the condo. *Id.,* at 471-472.

e) Just as a trustee is not permitted to unjustly enrich himself, so are his creditors precluded from claiming the property held under constructive trust. *Id.,* at 472.

23.    This is the view adopted by the Restatement of Trusts (Section 44) and followed in a number of jurisdictions. *See generally,* I A Scott, The Law of Trusts, Section 44, at 325–332 (3d ed. Supp.1982).  Applying these principles to the present case, when Debtor's mother transferred the property to Debtor and Debtor's brother, the parties expressly and orally agreed that Debtor and Debtor's brother were to hold only brief, bare record title solely for the benefit of Debtor's mother. *Id.*

24.    Debtor's mother retained all of the usual incidents of ownership while title was held in the name of Debtor and Debtor's brother.  Although Debtor's mother could not compel Debtor and Debtor's brother to convey back to her, when Debtor and Debtor's brother did do so, the conveyance gave validity to the prior oral agreement to hold the condo in trust. *Id.*

25.    In reconveying to Debtor's mother, Debtor and Debtor's brother were not transferring their own property.  Instead, they merely were establishing the status quo. *Id.*

26.    Debtor's financial condition was unaffected by the reconveyance because she never was a true owner.  For example, ownership provides a right to obtain a mortgage.  Here, Debtor and Debtor's brother had no such right. *Id. Also In re Associated Enterprises, Inc.,* 234 BR 718, 723

6

(Bankr. Court, D. Wis. 1999).

27.     As a matter of law, the reconveyance was supported by fair consideration—the equitable

obligation to reconvey.  Therefore, any evidence submitted on the issue of Debtor's insolvency is

superfluous because, where a transfer is supported by fair consideration, the issue of insolvency

is not reached under the Massachusetts Statute and Bankruptcy Act, Section 67(d).  And the

conveyance back to Debtor's mother was not fraudulent as to Debtor's creditors. *Gustie, supra.*

28.     The financial condition of Debtor and Debtor's brother were not affected by either receipt

of or retransfer of title back to Debtor's mother.  At the time of the bankruptcy filing Debtor had

no interest in the property just exactly as Debtor had no interest in the property prior to the May

conveyance. *Id., seeing Ward v. Grant,* 9 Mass.App. at 369, 401 N.E.2d at 163

29.     Under well-established Massachusetts law: a creditor of one who held only title to

property which he retransferred in fulfillment of an oral trust is not entitled to challenge the

reconveyance as a fraudulent transfer, *Id., seeing Ward v. Grant,* 9 Mass.App. 364, 401 N.E.2d

160 (1980), unless the creditor demonstrates that the conduct of the beneficiary estops him from

claiming ownership as against a particular creditor, *Id., seeing Perkins v. Hilton,* 329 Mass. 291,

107 N.E.2d 822 (1952), which is not the case here.

30.     Here, the Trustee cannot produce evidence that an actual creditor would succeed in

setting aside the reconveyance, because of estoppel or otherwise, choosing exclusively to rely on

the claim of H&R Block.

31.     As previously discussed, in the circumstances of this case, H&R Block is not entitled to

set aside the reconveyance to Debtor's mother, therefore the Trustee, unable to present any other

actual creditor with a claim, cannot succeed in his action.

32.     Under Massachusetts law, where the Trustee cannot assert any other cause of action, the

7

trustee may not avoid the conveyance as a fraudulent transfer.

WHEREFORE, the Debtor prays this honorable Court deny the motion of the trustee and H&R

Block; discharge Debtor's bankruptcy; and grant Debtor, Debtor's brother, and Debtor's mother

such further relief as is deemed just.

Dated: June 20, 2016.
Respectfully submitted,

Debra Feldman, Debtor
13 Aurora Lane
Salem, MA 01970
617-957-5367

U.S. BANKRUPTCY COURT
2017 JUN 20 P 12: 00

## CERTIFICATE OF SERVICE

Debtor, Debra Feldman, hereby certifies that a true copy of the within was served via first
class mail, upon Att. Kate Nicholson, on the 20th day of June, 2017.

Nicholson Herrick LLP
Kate Nicholson
21 Bishop Allen Dr.
Cambridge, MA 02139
857-600-0508


Casner & Edwards LLP
Michael Fencer L
303 Congress Street
Boston, MA 02210
617-426-5900

# Exhibit 5



Exhibit 5

## UNIT DEED

I, ROBERTA G. NEWELL, of 250 Hammond Pond Parkway, Newton, Middlesex County, Massachusetts

For consideration paid, and in full consideration of ONE DOLLAR ($1.00)

grant to DEBRA LOIS FELDMAN of 13 Aurora Lane, Salem, Essex County, Massachusetts, and DAVID ALAN FELDMAN of 3000 Highway 5, Apt. 712, Douglasville, Douglas County, Georgia, as joint tenants with the rights of survivorship,

With QUITCLAIM COVENANTS

Unit No. 1101-N in the North Building (the "Unit"), a unit in the Condominium at 250 Hammond Pond Parkway, Newton, Middlesex County, Massachusetts, known as The Towers of Chestnut Hill created by Master Deed dated March 27, 1981 and recorded with Middlesex South District Registry of Deeds on March 31, 1981 in Book 14249, Page 3, as amended by Amended Master Deed dated September 16, 1981, and recorded with Middlesex South District Registry of Deeds on September 17, 1981 in Book 14418, Page 2, as further amended by Second Amendment of the Master Deed of Chestnut Hill Condominium dated November 24, 1981 and recorded on December 1, 1981 with Middlesex South District Registry of Deeds in Book 14479 at Page 112, (hereinafter collectively referred to as the "Amended Master Deed").

The Post Office address of the unit is: 250 Hammond Pond Parkway, Unit 1101-N, Newton, Massachusetts 02167.

The unit is shown on a plan recorded with the first deed of this unit, to which is affixed a verified statement in the form provided by M.G.L. c. 183A s. 9, and is conveyed subject to and with the benefit of the obligations, restrictions, rights and liabilities contained in M.G.L. c. 183A, the Amended Master Deed, the documents establishing the organization of unit owners and the By-Laws as amended of record.

Each of the units in the condominium is intended for purposes as are set forth in the Amended Master Deed.

Return to:
Rubin, Hay & Gould, P.C.
205 Newbury Street
Framingham, MA 01701

<div style="writing-mode: vertical">Property Address: 250 Hammond Pond Parkway, Unit No. 1101-N, Newton, MA 02167</div>

Said Unit is conveyed together with:

1. An undivided .29421% interest appertaining to said Unit in the common areas and facilities of said Condominium, .01234% of which is attributable to each indoor parking space appurtenant to said Unit, and N/A % which is attributable to each outdoor parking space appurtenant to said Unit, all as described in the following paragraph 2;

2. The exclusive right and easement to use outdoor parking space no(s). N/A, as shown on drawing no. 35 of the plans generally entitled "The Towers of Chestnut Hill A Condominium at 250 Hammond Pond Parkway Newton, Massachusetts" dated August 5, 1981 and recorded with the Amended Master Deed (hereinafter referred to as "Plans"), and the exclusive right and easement to use indoor parking space no(s). 564 & 565, as shown on drawing nos. 33 and 34 of the Plans; and

3. The exclusive right and easement to use the balcony or balconies and/or terrace to which the Unit has direct access, if any, as shown on drawing nos. 1 through 32, inclusive, of the Plans.

Subject to and with the benefit of all rights, rights of way, agreements, easements, restrictions, reservations, appurtenances, provisions and interests of record, insofar as the same are in force and applicable.

Being the same and all the same premises as were conveyed by Deed of Chestnut Hill Towers Realty Company to Albert Newell (deceased) and Roberta G. Newell dated January 29, 1982 recorded in Middlesex South District Registry of Deeds in Book 14531, Page 105.

Reserving to the grantor, however, a life estate in the premises during the remainder of her lifetime, during which time the grantor shall have the exclusive right to occupy the premises and the right to receive all rents and profits from the premises but said grantor shall have no right to partition the premises. During said grantor's lifetime, she shall bear the cost of all insurance, maintenance, fees, charges and expenses relating to the premises and she shall pay all taxes assessed or imposed with respect thereto, and all principal and interest on any mortgages thereon.

Executed under seal this 5 day of May, 2016

ROBERTA G. NEWELL

Return to:
Rubin, Hay & Gould, P.C.
205 Newbury Street
Framingham, MA 01701

## COMMONWEALTH OF MASSACHUSETTS

_Middlesex_ , ss.

On May _5_, 2016, before me, the undersigned notary public, personally appeared ROBERTA
G. NEWELL, proved to me through satisfactory evidence of identification, which was a driver's
license, to be the person whose name is signed on the preceding or attached document, and
acknowledged to me that she signed it voluntarily for its stated purpose.


DAVID NGUYEN
Notary Public, Commonwealth of Massachusetts
My Commission Expires June 17, 2022

Notary Public
My commission expires: _June 17, 2022_

Property address:    250 Hammond Pond Parkway, Unit 1101-N
                     Newton, Massachusetts 02167

Return to:
Rubin, Hay & Gould, P.C.
205 Newbury Street
Framingham, MA 01701

# Exhibit 6



A4

Bk: 67995 Pg: 54    Doc: DEED
Page: 1 of 4    09/12/2016 12:06 PM

Exhibit 6

Property Address:    250 Hammond Pond Parkway, Unit No. 1101-N, Newton, MA  02167

## UNIT DEED

We, ROBERTA G. NEWELL, of 250 Hammond Pond Parkway, Newton, Middlesex County, Massachusetts as life tenant, DEBRA LOIS FELDMAN of 13 Aurora Lane, Salem, Essex County, Massachusetts, and DAVID ALAN FELDMAN of 3000 Highway 5, Apt. 914, Douglasville, Douglas County, Georgia as remainder men

For consideration paid, and in full consideration of ONE DOLLAR ($1.00)

grant to ROBERTA G. NEWELL, of 250 Hammond Pond Parkway, Newton, Middlesex County, Massachusetts,

With QUITCLAIM COVENANTS

Unit No. 1101-N in the North Building (the "Unit"), a unit in the Condominium at 250 Hammond Pond Parkway, Newton, Middlesex County, Massachusetts, known as The Towers of Chestnut Hill created by Master Deed dated March 27, 1981 and recorded with Middlesex South District Registry of Deeds on March 31, 1981 in Book 14249, Page 3, as amended by Amended Master Deed dated September 16, 1981, and recorded with Middlesex South District Registry of Deeds on September 17, 1981 in Book 14418, Page 2, as further amended by Second Amendment of the Master Deed of Chestnut Hill Condominium dated November 24, 1981 and recorded on December 1, 1981 with Middlesex South District Registry of Deeds in Book 14479 at Page 112, (hereinafter collectively referred to as the "Amended Master Deed").

The Post Office address of the unit is: 250 Hammond Pond Parkway, Unit 1101-N, Newton, Massachusetts 02467.

The unit is shown on a plan recorded with the first deed of this unit, to which is affixed a verified statement in the form provided by M.G.L. c. 183A s. 9, and is conveyed subject to and with the benefit of the obligations, restrictions, rights and liabilities contained in M.G.L. c. 183A, the Amended Master Deed, the documents establishing the organization of unit owners and the By-Laws as amended of record.

Each of the units in the condominium is intended for purposes as are set forth in the Amended Master Deed.

Return to:
Rubin, Hay & Gould, P.C.
205 Newbury Street
Framingham, MA 01701

Said Unit is conveyed together with:

1.  An undivided .29421% interest appertaining to said Unit in the common areas and facilities of said Condominium, .01234% of which is attributable to each indoor parking space appurtenant to said Unit, and N/A % which is attributable to each outdoor parking space appurtenant to said Unit, all as described in the following paragraph 2;

2.  The exclusive right and easement to use outdoor parking space no(s). N/A, as shown on drawing no. 35 of the plans generally entitled "The Towers of Chestnut Hill A Condominium at 250 Hammond Pond Parkway Newton, Massachusetts" dated August 5, 1981 and recorded with the Amended Master Deed (hereinafter referred to as "Plans"), and the exclusive right and easement to use indoor parking space no(s). 564 & 565, as shown on drawing nos. 33 and 34 of the Plans; and

3.  The exclusive right and easement to use the balcony or balconies and/or terrace to which the Unit has direct access, if any, as shown on drawing nos. 1 through 32, inclusive, of the Plans.

Subject to and with the benefit of all rights, rights of way, agreements, easements, restrictions, reservations, appurtenances, provisions and interests of record, insofar as the same are in force and applicable.

Being the same and all the same premises as were conveyed by Roberta G. Newell to Roberta G. Newell as life tenant, Debra Lois Feldman and David Alan Feldman as remainder men dated May 5, 2016 recorded in Middlesex South District Registry of Deeds in Book 67271, Page 26.

Executed under seal this 16ᵗʰ day of August, 2016

_____
ROBERTA G. NEWELL

_____
DEBRA LOIS FELDMAN

_____
DAVID ALAN FELDMAN

Return to:
Rubin, Hay & Gould, P.C.
205 Newbury Street
Framingham, MA 01701

STATE OF _Georgia_

County of _Douglas_

On August 1st, 2016, before me, the undersigned notary public, personally appeared DAVID ALAN FELDMAN, proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public
My commission expires: 7-9-19

Property address:    250 Hammond Pond Parkway, Unit I101-N
Newton, Massachusetts 02167

Return to:
Rubin, Hay & Gould, P.C.
205 Newbury Street
Framingham, MA 01701

COMMONWEALTH OF MASSACHUSETTS

<u>Middlesex County</u>, ss. 

On August 19th, 2016, before me, the undersigned notary public, personally appeared ROBERTA G. NEWELL, proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_____
Notary Public      William J Koscenski
My commission expires: 12/21/18

WILLIAM J. KOSCENSKI
Notary Public, Commonwealth of Massachusetts
My Commission Expires December 21, 2018

COMMONWEALTH OF MASSACHUSETTS

<u>Middlesex County</u>, ss. 

On August 19th, 2016, before me, the undersigned notary public, personally appeared DEBRA LOIS FELDMAN, proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_____
Notary Public      William J Koscenski
My commission expires: 12/21/18

WILLIAM J. KOSCENSKI
Notary Public, Commonwealth of Massachusetts
My Commission Expires December 21, 2018

Return to:
Rubin, Hay & Gould, P.C.
205 Newbury Street
Framingham, MA 01701

# Exhibit 7

After Recording Return To:
CENTURY BANK AND TRUST COMPANY
400 MYSTIC AVENUE
MEDFORD, MASSACHUSETTS 02155



SO.ESSEX #240 Bk:35007 Pg:235
06/16/2016 12:59 PM MTG Pg 1/17
eRecorded

Property Address:
13 Aurora Lane
Salem, Massachusetts 01970

──────────────── [Space Above This Line For Recording Data] ────────────────

# OPEN-END MORTGAGE AND SECURITY AGREEMENT
## THIS AGREEMENT SECURES AN OPEN-END, REVOLVING
## HOME EQUITY LINE OF CREDIT AND FUTURE ADVANCES.

## DEFINITIONS

(A)  "Security Instrument" means this document, which is dated       JUNE 11, 2016       , together with all Riders to this document.
(B)  "Borrower" is  Debra L Feldman Individually


the party or parties who have signed this Security Instrument.
Borrower is the Mortgagor under this Security Instrument.
(C)  "Lender" is  CENTURY BANK AND TRUST COMPANY

Lender is a              MASSACHUSETTS CHARTERED BANK              organized
and existing under the laws of                 MASSACHUSETTS
Lender's address is  400 MYSTIC AVENUE, MEDFORD, MASSACHUSETTS 02155

Lender is the Mortgagee under this Security Instrument.
(C-1) "Mortgage Broker" is              No mortgage broker
Mortgage Broker's post office address is  No mortgage broker

and Mortgage Broker's license number is              No mortgage broker
(C-2) "Mortgage Loan Originator" is              Daniel Martiniello
Mortgage Loan Originator's post office address is  400 Mystic Avenue, Medford, MA 02155
and Mortgage Loan Originator's license number is              725359
(D)  "Agreement" means the Home Equity Line of Credit Agreement signed by the Borrower.

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                          Page 1 of 13

DocMagic eForms
www.docmagic.com

13 Aurora Lane, Salem, MA 01970

(E)   "Account" means the Home Equity Line of Credit Account pursuant to which the Lender makes Advances to the Borrower at the Borrower's direction, allowing the Borrower to repay those Advances and take additional Advances, subject to the terms of the Agreement.

(F)   "Credit Limit" means the maximum aggregate amount of principal that may be secured by this Security Instrument at any one time.  The Credit Limit is        $90,000.00              . Except to the extent prohibited by Applicable Law, the Credit Limit does not apply to interest, finance charges, and other fees and charges validly incurred by Borrower under the Agreement and this Security Instrument. The Credit Limit also does not apply to other advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

(G)   "Account Balance" is the total unpaid principal of the Account, plus earned but unpaid finance charges, outstanding fees, charges, and costs.

(H)   "Maturity Date" is the date on which the entire Account Balance under the Agreement is due.  The entire Account Balance on your Account, as defined in the Agreement and this Security Instrument, is due on JUNE 11, 2036

(I)   "Property" means the Property that is described below under the heading "Transfer of Rights in the Property."

(J)   "Secured Debt" means:

> (1)   All amounts due under your Account, including principal, interest, finance charges, and other fees, charges, and costs incurred under the terms of this Security Instrument and all extensions, modifications, substitutions or renewals thereof.
>
> (2)   Any advances made and expenses incurred by Lender under the terms of this Security Instrument.

(K)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ 1-4 Family | ☒ Condominium Rider | ☐ Escrow Rider |
| ☐ Second Home | ☐ Planned Unit Development Rider | ☐ Mortgage Insurance Rider |
| ☐ Other(s) | | |

(L)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(M)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(N)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(O)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(P)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                              Page 2 of 13

DocMagic *eForms*
www.docmagic.com

(Q)  "Approved Prior Loan" means a lien which is and which lender acknowledges and agrees will continue to have priority over the lien created by this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the

                              COUNTY of Essex                                   :
         [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which currently has the address of                13 Aurora Lane
                                                      [Street]

        Salem            MASSACHUSETTS              01970        ("Property Address"):
        [City]              [State]               [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     ADVANCES.  During the Draw Period described in the Agreement, the Borrower may repeatedly take and repay any advances that Lender makes to Borrower under the terms of the Agreement and this Security Instrument, subject to the terms that the Agreement and this Security Instrument impose.  The Agreement and this Security Instrument will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount of equal to or less than zero.

     Any amounts that Lender advances to Borrower in excess of the Credit Limit will be secured by the terms of this Security Instrument unless applicable law prohibits the same.  Lender shall not be obligated to increase the Credit Limit formally or to make additional Advances in excess of the Credit Limit stated in the Agreement even though the Credit Limit has been exceeded one or more times.  The Draw Period may or may not be followed by a Repayment Period, as described in the Agreement, during which additional Advances are not available.  During both the Draw Period and the Repayment Period the Lender may, at its option, make Advances from the Account to pay fees, charges, or credit insurance premiums due under the Agreement or this Security Instrument, or make other Advances as allowed by this Security Instrument.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.   **Payment of Secured Debt.**  Borrower shall pay when due all Secured Debt in accordance with the Agreement and this Security Instrument. All payments shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement or Security Instrument be by a method of Lender's choosing. These methods include, but are not limited to: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Billing Statement or at such other location as may be designated by Lender in accordance with the notice provisions provided in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Account current. Lender may accept any payment or partial payment insufficient to bring the Account current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Agreement and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.**  All payments accepted by Lender shall be applied to the Secured Debt under this Security Instrument as provided in the Agreement unless Applicable Law provides otherwise. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount, of the Minimum Payment.

3.   **Funds for Escrow Items.**  Borrower shall not be required to pay into escrow amounts due for taxes, assessments, leasehold payments, or other insurance premiums unless otherwise agreed in a separate writing.

4.   **Charges; Liens; Prior Security Interests.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in a manner provided in Section 3.

Borrower shall promptly discharge any lien, other than the Approved Prior Loan, which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, other than the Approved Prior Loan, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth in this Section.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement. Borrower shall pay when due, or shall cause to be paid when due, all sums required under the loan documents evidencing the Approved Prior Loan and shall perform or cause to be performed all of the covenants and agreements of Borrower or the obligor set forth in such loan documents. All of Lender's rights under this Covenant shall be subject to the rights of the Holder of the Approved Prior Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                        Page 4 of 13

DocMagic *eForms*
www.docmagic.com

requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower and secured by this Security Instrument. These amounts shall be subject to the terms of the Agreement and the Security Instrument.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgagee clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgagee clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement up to the amount of the outstanding Agreement Account Balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement or this Security Instrument, whether or not then due.

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                                    Page 5 of 13

DocMagic *eForms*
www.docmagic.com

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of the Agreement and Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower resides on the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Home Equity Line of Credit Application Process; Default.** Borrower shall be in default if, during the Account application process, or at any time during the term of the Agreement, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Account. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Borrower is also in default if: 1) Borrower engages in fraud or makes a material misrepresentation at any time in connection with Borrower's Account; 2) Lender does not receive the full amount of any Minimum Payment due or Borrower fails to meet any of the other repayment terms of the Agreement; 3) Borrower's action or inaction adversely affects the Property or Lender's rights in it. Examples of these actions or inactions include, but are not limited to: a) Borrower's death, if Borrower is the sole person on the Account; or the death of all but one borrower which adversely affects Lender's security; b) Illegal use of the Property, if such use subjects the Property to seizure; c) Transfer of all or part of the Borrower's interest in the Property without Lender's written consent; d) All or part of the Property is taken by condemnation or eminent domain; e) Foreclosure of any senior lien on the Property; f) Failure to maintain required insurance on the Property; g) Waste or destructive use of the Property which adversely affects Lender's security; h) Failure to pay taxes or assessments on the Property; i) Permitting the creation of a senior lien on the Property other than an Approved Prior Loan; j) Filing of a judgment against Borrower, if the amount of the judgment and collateral subject to the judgment is such that Lender's security is adversely affected.

The Lender may, at its option, take lesser actions than those described in Section 9. Such lesser actions may include, without limitation, suspending Borrower's Account and not allowing Borrower to obtain any further Advances, reducing Borrower's Credit Limit, and/or changing the payment terms on Borrower's Account. If Lender takes any such actions, this shall not constitute an election of remedies or a waiver of Lender's right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of the Agreement, the Security Instrument, or at law or in equity. Lender may take action under this Section only after complying with any notice or cure provisions required under Applicable Law. In the event Lender elects not to terminate the Account or take any lesser action as provided in this Section, Lender does not forfeit or waive its right to do so at a later time if any of the circumstances described above exists at that time.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC   12/16/15                                    Page 6 of 13

DocMagic *eFormns*
www.docmagic.com

proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any Secured Debt secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender may without notice, perform or cause to be performed any covenant of Borrower in this Security Instrument, and Borrower appoints Lender as attorney in fact to sign Borrower's name. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take this action, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section.

Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower secured by this Security Instrument, payable according to the terms of the Agreement and this Security Instrument. These amounts shall bear interest at the Agreement rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   10.   **Mortgage Insurance.**  Borrower is not required to obtain Mortgage Insurance unless otherwise agreed in writing.

   11.   **Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

   If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in the Agreement and this Security Instrument.

   In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Secured Debt secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Secured Debt secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Secured Debt immediately before the partial taking, destruction, or loss in value divided by (b) the fair

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                                    Page 7 of 13

DocMagic *eForms*
www.docmagic.com

market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Secured Debt immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, and Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Secured Debt secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be otherwise applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the Secured Debt secured by this Security Instrument granted by Lender to Borrower or any Successors in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the Secured Debt secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

**14. Agreement/Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                    Page 8 of 13

DocMagic *eFerms*
www.docmagic.com

be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other Account charges collected or to be collected in connection with the Account exceed the permitted limits, then: (a) any such Account charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

18.  **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                                    Page 9 of 13

DocMagic *eForms*
www.docmagic.com

**19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender or causes Lender to be paid all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the Secured Debt secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Change of Servicer; Notice of Grievance.**  The Agreement or a partial interest in the Agreement (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Servicer") that collects the amounts due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Servicer unrelated to a sale of the Agreement. If the Agreement is sold and thereafter the Agreement is serviced by a Servicer other than the purchaser of the Agreement, the servicing obligations to Borrower will remain with the Servicer or be transferred to a successor Servicer and are not assumed by the Agreement purchaser unless otherwise provided.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party and allowed the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and reasonable time to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.  Hazardous Substances.**  As used in this Section:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                    Page 10 of 13

DocMagic *eForms*
www.docmagic.com

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon Borrower's request, and upon payment in full of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**25. Open-End Mortgage.** This Security Instruments secures repayment of sums lent by Lender to Borrower from time to time pursuant to an "open-end credit plan" as defined in Section 1 of Chapter 140D of the General Laws of Massachusetts.

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                    Page 11 of 13

DocMagic *eForms*
www.docmagic.com

**MORTGAGEE REQUESTS NOTICE OF ANY ADVERSE ACTION
THAT A PRIORITY LIEN HOLDER TAKES WITH REGARD TO
THE PROPERTY, INCLUDING DEFAULT AND FORECLOSURE**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
Debra L Feldman          -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                                         -Borrower

Witness: _____        Witness: _____

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                          Page 12 of 13

DocMagic *ePorms*
www.docmagic.com

——————————— [Space Below This Line For Acknowledgment] ———————————

Commonwealth of __MASSACHUSETTS__

County of ___Essex___

On this __11__ day of __June 16_____ , before me, the undersigned notary public,

personally appeared __Debra L Feldman_____

_____

_____ ,

(name of document signer)

proved to me through satisfactory evidence of identification, which were __MADL_____

_____ ,

to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she)
signed it voluntarily for its stated purpose.

☐ (as partner for _____ ,
a partnership)

☐ (as _____ for _____
_____ , a corporation)

☐ (as attorney in fact for _____ ,
the principal)

☐ (as _____ for _____
_____ , (a) (the)
_____ )

_____
Notary Public

Vanessa Rivera Key
NAME OF NOTARY (Printed Name)
Notary Public
Commonwealth of Massachusetts
My commission expires Commission Expires Nov. 23, 2018

(Seal)

MASSACHUSETTS HOME EQUITY LINE OF CREDIT MORTGAGE
AND SECURITY AGREEMENT
© 2008 DOCMAGIC, INC.
MAHESI.HLC  12/16/15                    Page 13 of 13

DocMagic ℰℱℴ𝓇𝓂𝓈
www.docmagic.com

Date: JUNE 11, 2016

Property Address: 13 Aurora Lane
                  Salem, Massachusetts 01970

# EXHIBIT "A"

# LEGAL DESCRIPTION

A.P.N. # :

*DocMagic eForms*
*www.docmagic.com*

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 11th day of  JUNE, 2016                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure repayment of a Home Equity Line of Credit Agreement (the "Agreement") to  CENTURY
BANK AND TRUST COMPANY, A MASSACHUSETTS CHARTERED BANK
(the "Lender") of the same date and covering the Property described in the Security Instrument and located
at:
                13 Aurora Lane, Salem, Massachusetts 01970

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as

                The Sanctuary Condominium
                [Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree as follows:

**A.  Condominium Obligations.**  Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents.  The "Constituent Documents" are the (i) Declaration or
any other equivalent document which creates the Owners Association; (ii) by-laws; (iii) code of regulations;
and (iv) other equivalent documents.  Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

**B.  Property Insurance.**  So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Condominium Project which is satisfactory to
Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods,
and against loss by fire, hazards included within the term "extended coverage," and any other hazards,
including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's
obligation to maintain property insurance coverage on the Property is deemed satisfied to the extent that the
required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage
provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following
a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are

HELOC SECURITY INSTRUMENT - CONDOMINIUM RIDER
USHERDCN.HLC  12/21/04                        Page 1 of 2                        *DocMagic eForms*
                                                                                 *www.docmagic.com*

hereby assigned and shall be paid to Lender for application to the Secured Debt, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the Secured Debt as provided in the Security Instrument.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the rate specified in the HELOC and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)          _____ (Seal)
Debra L Feldman              -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                          -Borrower

HELOC SECURITY INSTRUMENT - CONDOMINIUM RIDER
USHERDCN.HLC  12/21/04                    Page 2 of 2                    DocMagic eForms
                                                                        www.docmagic.com

EXHIBIT A

The following described real property situated in the city of Salem, county of Essex, and
Commonwealth of Massachusetts, to wit:

The Unit known as No. D ("Unit") in Building No. 94 ("Building") in Phase 3 in the
Sanctuary Condominium ("Condominium") located in Salem, County of Essex,
Massachusetts and established by the Grantor pursuant to the Massachusetts General
laws, Chapter 183A by Master Deed dated November 3, 1986 and recorded November
18, 1986 with the Southern Essex District Registry of Deeds in Book 8630, Page 463
("Master Deed"), as amended by the first amendment of Master Deed dated March 31,
1987 and recorded with said deeds as Document No. 446, which unit is shown on the
floor plan ("Plans") of the building recorded simultaneously with said amendment of
master deed and on a copy of the portion of said plans attached hereto and made a part
hereof, to which is affixed the verified statement of a registered professional engineer,
architect or land surveyor in the form required by Section 9 of said Chapter 183A. Said
unit is conveyed together with:

1. An undivided 8947 percent interest in the common areas and facilities of the
   property ("Common Elements") described in said amendment to master deed
   attributable to the unit. In the event (s provided in the master deed) subsequent
   phase or sub phases are added to the condominium by amendment to the master
   deed, the undivided interest of the unit in the common elements shall be and
   become that specified in Schedule D of the Master Deed, as amended.

By fee simple deed from Ledgemere Condominium Corporation, a Massachusetts
Corporation as set forth in Deed Book 8958, Page 236 and recorded on 5/13/1987, Essex
County Records.

Property Address: 13 Aurora Lane, Salem, MA 01970

# Exhibit 8

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Debra L Feldman** |
| | First Name — Middle Name — Last Name |
| Debtor 2 (Spouse. if filing) | |
| | First Name — Middle Name — Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | **16-13432** |

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property                                                12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest in

1.  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

1.1

**13 Aurora Lane**
**D-94**
Street address, if available, or other description

**Salem**        **MA**    **01970-0000**
City            State     ZIP Code

**Essex**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$325,000.00** | **$325,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property (see instructions)

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................=>

| |
|---|
| **$325,000.00** |

**Part 2:**  Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1    **Debra L Feldman**                                   Case number (if known)   **16-13432**

## 3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No

■ Yes

| | | | |
|---|---|---|---|
| 3.1 | Make: **Honda** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | Model: **CRV** | ■ Debtor 1 only | |
| | Year: **2012** | ☐ Debtor 2 only | |
| | Approximate mileage: **65000** | ☐ Debtor 1 and Debtor 2 only | Current value of the entire property? · Current value of the portion you own? |
| | Other information: | ☐ At least one of the debtors and another | |
| | | ☐ Check if this is community property (see instructions) | $12,000.00 · $12,000.00 |

## 4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

**5** Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................................=>         $12,000.00

**Part 3:**  **Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own? Do not deduct secured claims or exemptions.

## 6. Household goods and furnishings
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No

■ Yes. Describe.....

| Misc household furnishings | $10,000.00 |
|---|---|

## 7. Electronics
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

■ No

☐ Yes. Describe.....

## 8. Collectibles of value
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No

☐ Yes. Describe.....

## 9. Equipment for sports and hobbies
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

■ No

☐ Yes. Describe.....

## 10. Firearms
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

■ No

☐ Yes. Describe.....

Debtor 1    **Debra L Feldman**    Case number *(if known)*    **16-13432**

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
☑ Yes.  Describe.....

| | |
|---|---|
| Debtors Clothing | $500.00 |

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
☑ Yes.  Describe.....

| | |
|---|---|
| Misc jewelry | $1,000.00 |

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
☑ No
☐ Yes.  Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
☑ No
☐ Yes.  Give specific information.....

**15.   Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .........................................................................**      | $11,500.00 |

**Part 4:  Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?     **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
☑ Yes................................................................................

|  |  |
|---|---|
| Cash | $50.00 |

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
☑ Yes........................         Institution name:

| | | |
|---|---|---|
| 17.1. | **Century Bank Checking Account** | $1,054.00 |
| 17.2.  Checking | **Bank of America Checking Account partial owner with mother, and step father** | $625.33 |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
☑ No
☐ Yes.................         Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
☐ No

| Debtor 1 | **Debra L Feldman** | Case number *(if known)* | **16-13432** |

■ Yes.  Give specific information about them..................

| Name of entity: | % of ownership: | |
|---|---|---|
| Your Tax Resourse Inc | 100 % | $0.00 |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them
    Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No
■ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| 401K | Oppenheimer Funds | $269,136.57 |
| IRA | Enterprise Financial | $315,464.55 |

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. ....................         Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes............    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☐ No
■ Yes.  Give specific information about them...

| | |
|---|---|
| Copyright USPTO# TXU1-699-435 | $100.00 |
| Copyright USPTO# TXU1-113-763 | $100.00 |
| Copyright USPTO# TXU1-599-500 | $100.00 |
| Copyright USPTO #PAU 3-507-228 | $100.00 |
| Copyright USPTO # TXU 1 616 576 | $100.00 |

Debtor 1    **Debra L Feldman**                                                          Case number *(if known)*    **16-13432**

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
   ■ No
   ☐ Yes. Give specific information about them...

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**28. Tax refunds owed to you**
   ■ No
   ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
   ■ No
   ☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
   ■ No
   ☐ Yes. Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ■ No
   ☐ Yes. Name the insurance company of each policy and list its value.

|       Company name: | Beneficiary: | Surrender or refund value: |

**32. Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
   ■ No
   ☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   ■ No
   ☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ■ No
   ☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**
   ■ No
   ☐ Yes. Give specific information..

**36.  Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here........................................................................................**

| **$586,830.45** |

| **Part 5:** | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

**37. Do you own or have any legal or equitable interest in any business-related property?**
   ☐ No. Go to Part 6.
   ■ Yes.  Go to line 38.

**Current value of the**

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

| Debtor 1 | Debra L Feldman | | Case number *(if known)* | **16-13432** |

**portion you own?**
Do not deduct secured
claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☐ No

■ Yes. Describe.....

| Accounts receivable owed by Goodbaby | $1,800.00 |

**39. Office equipment, furnishings, and supplies**
   *Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

■ No

☐ Yes. Describe.....

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☐ No

■ Yes. Describe.....

| misc office equipment | $2,000.00 |

**41. Inventory**

■ No

☐ Yes. Describe.....

**42. Interests in partnerships or joint ventures**

■ No

☐ Yes. Give specific information about them...................
   Name of entity:                                          % of ownership:

**43. Customer lists, mailing lists, or other compilations**

■ No.

☐ Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

   ■ No
   ☐ Yes. Describe.....

**44. Any business-related property you did not already list**

■ No

☐ Yes. Give specific information.........

**45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here.........................................................................................................**

| $3,800.00 |

| Part 6 | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
| | If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes. Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |

Debtor 1   **Debra L Feldman**    Case number *(if known)*  **16-13432**

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership
   ■ No
   ☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here** ...................................  | **$0.00** |

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

55.  **Part 1: Total real estate, line 2** ........................................................................................................  **$325,000.00**
56.  **Part 2: Total vehicles, line 5**    **$12,000.00**
57.  **Part 3: Total personal and household items, line 15**    **$11,500.00**
58.  **Part 4: Total financial assets, line 36**    **$586,830.45**
59.  **Part 5: Total business-related property, line 45**    **$3,800.00**
60.  **Part 6: Total farm- and fishing-related property, line 52**    **$0.00**
61.  **Part 7: Total other property not listed, line 54**   +   **$0.00**

62.  **Total personal property. Add lines 56 through 61...**    **$614,130.45**   Copy personal property total   **$614,130.45**

63.  **Total of all property on Schedule A/B. Add line 55 + line 62**    **$939,130.45**

# Exhibit 9

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Debra L Feldman** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | **16-13432** |
| (if known) | |

☐ Check if this is an
amended filing

# Official Form 107
# Statement of Financial Affairs for Individuals Filing for Bankruptcy          4/16

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

**Part 1:     Give Details About Your Marital Status and Where You Lived Before**

1.   **What is your current marital status?**

☐  Married
■  Not married

2.   **During the last 3 years, have you lived anywhere other than where you live now?**

■  No
☐  Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | | |

3.   **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■  No
☐  Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2     Explain the Sources of Your Income**

4.   **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐  No
■  Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
| For last calendar year: (January 1 to December 31, 2015 ) | ■ Wages, commissions, bonuses, tips | $30,000.00 | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

| Debtor 1 | **Debra L Feldman** | | | Case number *(if known)* | **16-13432** |

| | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For the calendar year before that:**<br>**(January 1 to December 31, 2014 )** | ■ Wages, commissions, bonuses, tips | $36,629.00 | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

**5.  Did you receive any other income during this year or the two previous calendar years?**

Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

■ No
☐ Yes. Fill in the details.

| | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

<table><tr><td>**Part 3:**</td><td>**List Certain Payments You Made Before You Filed for Bankruptcy**</td></tr></table>

**6.  Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☐   No.   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,425* or more?

☐ No.    Go to line 7.
☐ Yes   List below each creditor to whom you paid a total of $6,425* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
* Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.

■ Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No.    Go to line 7.
■ Yes   List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| **Century Bank**<br>**399 Mystic Ave**<br>**Medford, MA 02155** | 7/1, 8/1, 9/1, | $2,300.00 | $78,000.00 | ■ Mortgage<br>☐ Car<br>☐ Credit Card<br>■ Loan Repayment<br>☐ Suppliers or vendors<br>☐ Other___ |

| Debtor 1 | **Debra L Feldman** | Case number *(if known)* | **16-13432** |
|---|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **H&R Blck v. Debra Feldman 15-545A** | **Contract dispute** | **Salem Superior Court 56 Federal Street Salem, MA 01970** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Feldman v. Rhimes et al 15-1130** | **Copyright Infringement** | **1st Ciruit of Appeal** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
■ No
☐ Yes

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1    **Debra L Feldman**                                                Case number *(if known)*    **16-13432**

---

| Part 5: | List Certain Gifts and Contributions |
|---------|--------------------------------------|

**13.** **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

**14.** **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

■ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

| Part 6: | List Certain Losses |
|---------|---------------------|

**15.** **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☐ No
■ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|
| **Car accident** | **Settled with BI Carrier April 2015 for net to debtor 7943.08** | **May 6 2014** | **$0.00** |

| Part 7: | List Certain Payments or Transfers |
|---------|-------------------------------------|

**16.** **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Dropkin & Matza LLP**<br>**424 Broadway**<br>**Somerville, MA 02145**<br>**mdropkin@dropkinmatza.com** | **Attorney Fees** | **September 2, 2016** | **$4,500.00** |

**17.** **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1   **Debra L Feldman**                                                Case number *(if known)*   **16-13432**

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☐ No
■ Yes. Fill in the details.

| Person Who Received Transfer Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| **Roberta Newall**<br>**250 Hammond Pond Parkway**<br>**Chestnut Hill, MA 02467**<br><br>**Mother** | **16C Street, Conway New Hampshire** | **Debtor transferred her 50% interest of property to Roberta Newall, Debtors mother in consideration of Mother paying living expenses and tuition of Debtor to attend law school** | **2015** |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)
■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:    List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units**

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.
☐ No
■ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| **AmeriaFinancial** | **XXXX-** | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>■ Other  **paid mortgage** | **Septemeber 1st** | **$2,200.00** |

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

| Debtor 1 | **Debra L Feldman** | | Case number *(if known)* | **16-13432** |

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility<br>**Address** (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>**Address** (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:**   Identify Property You Hold or Control for Someone Else

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ No
☐ Yes. Fill in the details.

| Owner's Name<br>**Address** (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:**   Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ No
☐ Yes. Fill in the details.

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

■ No
☐ Yes. Fill in the details.

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:**   Give Details About Your Business or Connections to Any Business

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

Debtor 1    **Debra L Feldman**    Case number (*if known*)    **16-13432**

---

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

■ **No. None of the above applies. Go to Part 12.**

☐ **Yes. Check all that apply above and fill in the details below for each business.**

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ **No**

☐ **Yes. Fill in the details below.**

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

---

**Part 12:    Sign Below**

---

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Debra L Feldman**

**Debra L Feldman**    _____

**Signature of Debtor 1**    **Signature of Debtor 2**

Date    **September  9, 2016**    Date    _____

**Did you attach additional pages to** *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* **(Official Form 107)?**

■ No

☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

---